UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN DAVIS,
                    Plaintiff(s),

        v.

DELTA AIR LINES INC,
                    Defendant(s).

CASE NO. C24-0954-KKE

ORDER ON MOTION TO REMAND

Plaintiff Brian Davis filed this putative class action in King County Superior Court alleging that Defendant Delta Air Lines Inc. ("Delta") violated Washington's Equal Pay and Opportunity Act ("EPOA") by failing to disclose certain pay information in a job posting. *See* Wash. Rev. Code § 49.58.110; Dkt. No. 1-1. Delta removed the case to this Court (Dkt. No. 1) and Davis now moves to remand it back to state court (Dkt. No. 27).

This Court must remand a removed case to state court if the plaintiff lacks standing to bring a federal suit under Article III of the United States Constitution. Article III standing requires, among other things, a concrete injury-in-fact. Although he applied for a position, Davis never alleges he was genuinely interested in gaining employment with Delta. Accordingly, he fails to plead a cognizable injury resulting from Delta's alleged violation of the pay disclosure requirement. Recognizing this possible defect in the Court's removal jurisdiction, Delta presents its own allegations and evidence in an attempt to show that Davis was, in fact, serious about getting

ORDER ON MOTION TO REMAND - 1

a job. At best, however, Delta shows that he met the minimum qualifications; and, on balance, the record undermines Delta's contention.

Because Delta has not carried its burden to show the existence of subject matter jurisdiction, the Court will grant Davis's motion to remand.

## I.    BACKGROUND

Davis alleges that on April 24, 2024, he applied to Delta for an "In-Flight Service (IFS) Field Operations Support Coordinator" position that he found through a job posting on Delta's website. Dkt. No. 1-1 ¶¶ 25, 30; *id.* at 15. According to his complaint, the job posting "did not disclose the wage scale or salary range being offered[,]" causing him "to complete the entire application without learning the rate of pay." *Id.* ¶¶ 27, 29. Davis further alleges that Delta's failure to post wage or salary information "negatively impacts [his] current and lifetime wages," adversely affects his "ability to negotiate pay," and resulted in "lost valuable time[.]" *Id.* ¶¶ 32–34.

Davis filed this lawsuit in King County Superior Court claiming Delta violated a provision of the EPOA that became effective January 1, 2023, requiring employers to disclose certain pay information in job postings. Dkt. No. 1-1; Wash. Rev. Code § 49.58.110. In particular, the provision requires employers "with 15 or more employees" to disclose the "wage scale or salary range" and a "general description" of other compensation and benefits in each posting for an available position. Wash. Rev. Code § 49.58.110(1)(a), (3). The statute provides a private right of action authorizing any "job applicant" or "employee" to sue an employer for violating the pay disclosure requirement. *Id.* § 49.58.110(5).

In this suit, Davis seeks to represent a class of individuals who responded to job postings lacking the same information for Delta positions in Washington. Dkt. No. 1-2 ¶ 21. Delta removed the case to this Court based on diversity jurisdiction and the Class Action Fairness Act ("CAFA").

Dkt. No. 1 (citing 28 U.S.C. § 1332(a), (d)).  Delta then moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that Davis failed to allege facts showing he was a "job applicant" under the statute.  Dkt. No. 9 at 9.  Davis moved to remand the case back to state court, arguing that the Court lacks jurisdiction because, among other reasons, Davis lacks Article III standing.  Dkt. No. 10 at 1.

On October 11, 2024, amid briefing on these motions, the Washington State Supreme Court accepted review of a certified question concerning the EPOA from Judge John H. Chun of this Court.  *Branson v. Wash. Fine Wines & Spirits, LLC*, 557 P.3d 253 (Wash. 2024).  The certified question asked: "What must a Plaintiff prove to be deemed a 'job applicant' within the meaning of RCW 49.58.110(4)?  For example, must they prove that they are a 'bona fide' applicant?"  *Branson v. Wash. Fine Wines & Spirits, LLC*, 2:24-CV-00589-JHC, 2024 WL 4510680, at *1 (W.D. Wash. Aug. 20, 2024).  Finding the certified question relevant to the pending motions in this case, this Court stayed the case until the Supreme Court issued its opinion in *Branson*.  Dkt. No. 16.

On September 4, 2025, the Washington Supreme Court answered the certified question as follows:

> A job applicant need not prove they are a "bona fide" applicant to be deemed a "job applicant."  Rather, in accordance with the plain language of RCW 49.58.110(4), a person must apply to any solicitation intended to recruit job applicants for a specific available position to be considered a "job applicant," regardless of the person's subjective intent in applying for the specific position.

*Branson v. Wash. Fine Wine & Spirits, LLC*, 574 P.3d 1031, 1040 (Wash. 2025).  As requested by the parties, this Court lifted the stay.  Dkt. No. 20.  Davis again moved to remand (Dkt. No. 27), and Delta filed an answer to the complaint (Dkt. No. 28).  The Court finds oral argument on the motion to remand unnecessary, and the motion is now ripe for consideration.

## II.    ANALYSIS

### A.    Legal Standard for Remand

A party may remove a state court action to federal district court under 28 U.S.C. § 1441 only if the action could have originally been filed in federal court. *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1091 (9th Cir. 2025); 28 U.S.C. § 1441(a). If the district court determines, after removal, it lacks subject matter jurisdiction, it must remand the case back to state court. 28 U.S.C. § 1447(c). As a general rule, courts apply a "strong presumption" against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (quoting *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir.1990)). However, "no antiremoval presumption attends cases invoking CAFA[.]" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Nevertheless, "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

A plaintiff seeking remand of a removed action can mount either a "facial" or "factual" challenge to the defendant's jurisdictional allegations in the notice of removal. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the defendant's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (citation modified). A "factual attack[,]" on the other hand, "contests the truth of the allegations themselves." *Id.* (citation modified). Once a plaintiff contests the removal notice's jurisdictional allegations, the defendant must present "competent proof" establishing the jurisdictional fact "by a preponderance of the evidence[.]" *Id.* at 699, 701 (quoting *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)).

### B.    Article III Standing

In something of a role reversal from the typical case, Davis argues he lacks Article III

ORDER ON MOTION TO REMAND - 4

standing while Delta defends his standing to sue. In "every federal case[,]" standing is a "threshold question" that "determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In class actions, the standing analysis focuses on the individual class representatives. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). Standing requirements "can neither be waived by the parties nor ignored by the court[.]" *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 932 n.17 (9th Cir. 2011). As the party seeking to invoke federal jurisdiction, Delta has the burden of showing the existence of standing. *Smelt v. Cnty. of Orange*, 447 F.3d 673, 682 (9th Cir. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Standing exists if the plaintiff has an injury-in-fact that is concrete, particularized, actual or imminent, fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision. *Cal. Sea Urchin Comm'n v. Bean*, 883 F.3d 1173, 1180 (9th Cir. 2018), *as amended* (Apr. 18, 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Importantly, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016).

Here, Davis's suit is based on the alleged violation of his rights under the EPOA. When standing is based on statutory rights, "a bare procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Id.* Statutes may elevate intangible harms to the status of a concrete injury if the statutory violation presents a "risk of real harm" or "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts[.]" *Id.* at 340–41. Still, a "procedural violation

ORDER ON MOTION TO REMAND - 5

of an informational entitlement" like the EPOA will not "suffice to keep a claim in federal court" unless the plaintiff "allege[s] at least that the information had some relevance to *her*." *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021) (emphasis in original) (quoting *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 493 (6th Cir. 2019)).  To determine if a statutory violation creates a concrete injury-in-fact, the Ninth Circuit in *Magadia* instructed courts to consider (1) "whether the statutory provisions at issue were established to protect ... concrete interests (as opposed to purely procedural rights)" and (2) "whether the specific procedural violations alleged in th[e] case actually harm, or present a material risk of harm to, such interests." *Id.*  As detailed below, the Court concludes that Davis's suit fails this test.

Beginning with *Magadia*'s first step, several courts in this District have held that Washington's legislature enacted the EPOA's pay disclosure requirement "to protect concrete, non-procedural rights for job applicants and employees." *Hill v. ACV Auctions Inc.* ("*Hill I*"), No. C25-616 MJP, 2025 WL 1582249, at *3 (W.D. Wash. June 4, 2025); *see also Partridge v. Heartland Express Inc. of Iowa*, No. 3:24-CV-05486-DGE, 2024 WL 4164245, at *3 (W.D. Wash. Sep. 12, 2024) ("[EPOA] protects job applicants' concrete interest in receiving 'sufficient information to ensure fair and equitable pay negotiations.'") (quoting *Spencer v. Vera Whole Health, Inc.*, No. C24-337 MJP, 2024 WL 3276578, at *3 (W.D. Wash. July 2, 2024)).  This Court agrees.  By arming job applicants with wage and salary information early in the application process, the EPOA's disclosure requirement protects applicants' interest in negotiating fair pay and "avoid[ing] wast[ed] time interviewing for positions whose pay would never be adequate." *Hill I*, 2025 WL 1582249, at *3.

The parties dispute whether Davis's suit satisfies *Magadia*'s second step.  As numerous courts in this District have held, unless the plaintiff was "a bona fide applicant" for employment, an EPOA violation involving "a job posting with no compensation information included" does not

ORDER ON MOTION TO REMAND - 6

"by itself … manifest concrete injury[.]" *Hill v. Les Schwab Tire Ctrs. of Wash. LLC* ("*Hill II*"), No. 24-CV-425-BJR, 2025 WL 3062646, at *4 (W.D. Wash. Oct. 31, 2025) (citing cases); *see also, e.g., Eggleston v. Bruckner Truck Sales Inc.*, No. C25-1467JLR, 2025 WL 3153503, at *3 (W.D. Wash. Nov. 12, 2025) ("Absent a showing of bona fide intent or good faith, Mr. Eggleston cannot show an injury-in-fact."). This makes sense because failing to disclose pay information cannot impact pay negotiations, time spent interviewing, or compensation for a job the plaintiff never actually intended to pursue. Thus, "a nominal applicant with no interest in the position will neither receive a benefit from early pay disclosure nor be harmed by the lack thereof." *Hill II*, 2025 WL 3062646, at *4. And while *Branson* held that such applicants are "job applicants" under the statute, it did not purport to address whether an EPOA violation harms their concrete interests for Article III standing purposes. 574 P.3d at 1040.

    1.  Scope of the standing inquiry

Before determining whether Davis meets the "bona fide applicant" requirement, the Court must resolve a preliminary dispute regarding the nature of the Court's standing inquiry on a motion to remand. Delta contends that, as the party seeking to invoke the Court's jurisdiction, its jurisdictional allegations must be accepted as true unless Davis factually challenges them. Dkt. No. 30 at 9–13. Delta also presents two declarations, which it argues prove Davis was more likely than not a bona fide applicant. *Id.* at 3, 12, 15. Davis, on the other hand, argues that the standing analysis looks only to the allegations in the complaint and faults Delta for relying on "documents outside [the] complaint." Dkt. No. 33 at 2. Delta agrees that the complaint's allegations are also relevant but argues that Davis's allegations of harm independently establish his standing to sue. *Id.* at 13–16.

The Court agrees with Delta that it is not limited to the allegations in the complaint in evaluating its removal jurisdiction. "[A] defendant seeking to remove an action … must allege the

ORDER ON MOTION TO REMAND - 7

underlying facts supporting each of the requirements for removal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) (citing *Gaus*, 980 F.2d at 567). When a motion to remand challenges those requirements, Courts evaluate the motion using the "same framework" that applies to motions to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Id.* Under that framework, as explained above, a remand motion can assert either a facial or factual challenge. *Id.* at 1121–22. If the plaintiff asserts a *facial* challenge— meaning, he accepts "the removal notice's factual allegations but … asserts that those allegations are facially insufficient to invoke federal jurisdiction"—courts "accept the notice's factual allegations as true[.]" *DeFiore v. SOC LLC*, 85 F.4th 546, 552 (9th Cir. 2023). If, on the other hand, the plaintiff asserts a *factual* challenge—meaning, he disputes the truth of the facts on which removal jurisdiction is based—the defendant is obligated to defend its jurisdictional allegations "with competent proof." *Leite*, 749 F.3d at 1123. In either case, once the defendant alleges a factual basis for federal jurisdiction, a plaintiff seeking remand cannot avoid being in federal court simply because the complaint omits certain jurisdictional facts.

In advocating for a contrary approach, Davis relies on caselaw applying the "well-pleaded complaint" rule, which determines the existence of federal question jurisdiction under 28 U.S.C. § 1331 based solely on the complaint. Dkt. No. 33 at 3 (citing *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 12 n.11 (1983)). Under that rule, courts look exclusively to "the plaintiff's own claims and allegations" to determine if the "complaint includes the requisite federal question" to invoke federal jurisdiction. *Royal Canin*, 604 U.S. at 26–27. Because the plaintiff is "the master of the complaint," "[s]he gets to determine which substantive claims to bring" and, "in doing so, … can establish—or not—the basis for a federal court's subject-matter jurisdiction." *Id.* at 35; *see also Gunn v. Minton*, 568 U.S. 251, 257–58 (2013) (explaining that federal question jurisdiction

ORDER ON MOTION TO REMAND - 8

exists if "federal law creates the cause of action asserted" or a state law claim necessarily raises certain federal issues).

But unlike the choice of whether to plead a federal issue, Article III standing turns on facts on the ground—for instance, whether Davis in fact applied to Delta intending to seek employment. And courts treat issues of jurisdictional fact differently than those that turn on "the plaintiff's decision … to add or subtract claims or parties." *See Royal Canin*, 604 U.S. at 38 n.8 (contrasting the effect of amending the complaint to "reduc[e] the alleged amount-in-controversy" with the decision to drop a federal claim or a diverse defendant). Thus, "a plaintiff may defeat removal by choosing not to plead independent federal claims." *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Mont.*, 213 F.3d 1108, 1114 (9th Cir. 2000); *see also Taylor v. Anderson*, 234 U.S. 74, 75 (1914) (explaining the existence of a federal question turns on "what necessarily appears in the plaintiff's statement of his own claim"). Standing, on the other hand, must be "based on the facts at the time of filing." *Isaacson v. Mayes*, 84 F.4th 1089, 1099 n.7 (9th Cir. 2023) (citing *Lujan*, 504 U.S. at 569 n.4). Therefore, courts evaluate challenges to standing using the Rule 12(b)(1) framework, which, in the context of removal, considers the defendant's jurisdictional allegations (in a facial challenge) or "competent proof" (in a factual challenge).[1] *See White v. BP Prods. N. Am., Inc.*, No. 5:24-CV-01827-SPG-SK, 2024 WL 5247959, at *2 (C.D. Cal. Dec. 26, 2024); *see also Torres v. Farmay, Inc.*, No. 25-CV-00146-KAW, 2025 WL 822694, at *2 (N.D. Cal. Mar. 14, 2025).

---

[1] Similarly, Davis's reliance on *Faulk v. JELD-WEN, Inc.*, 159 F.4th 618 (9th Cir. 2025)—which held that an amendment to the complaint excising class action allegations defeats federal jurisdiction under CAFA—is inapposite. Like the decision whether to plead a federal issue (or to sue a diverse defendant), a plaintiff's decision whether to bring a class action makes or breaks federal jurisdiction under CAFA. *See* 28 U.S.C. § 1332(d)(2). Accordingly, courts look only "to the operative complaint, including any post-removal amendments" to determine whether a case is a "class action" as required for CAFA jurisdiction. 159 F.4th at 623. And a plaintiff seeking to defeat federal jurisdiction is free to "sacrifice[] a litigation advantage by excising their class action allegations." *Id.* at 625. By contrast, standing depends on facts, not the plaintiff's choice of what type of lawsuit to bring.

ORDER ON MOTION TO REMAND - 9

Accordingly, the Court rejects Plaintiff's reliance on the well-pleaded complaint rule and instead applies the Rule 12(b)(1) framework to determine whether the facts alleged or proven suffice to invoke the Court's jurisdiction.

### 2. Davis's challenge to standing is factual

Turning to this task, Delta argues that Davis mounts only a facial challenge to standing and that Delta's jurisdictional allegations must therefore be taken as true. Dkt. No. 30 at 9 (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014)). Although the remand notice itself does not allege anything about Davis's intent when applying for the position (*see* Dkt. No. 1), Delta argues that its allegations in its answer—which include that "it is more likely than not that Plaintiff was a bona fide job applicant" (Dkt. No. 28 ¶ 26)—"are treated as amendments to the notice of removal." Dkt. No. 30 at 11 (citing *Gen. Dentistry for Kids, LLC v. Kool Smiles, P.C.*, 379 F. App'x 634, 635–36 (9th Cir. 2010)). Because Davis has not presented contrary evidence of his intent, Delta argues that the Court should accept its allegations as true.

Even assuming, however, that the answer supplements the removal notice, the Court disagrees that Davis's jurisdictional challenge is facial, rather than factual. Davis largely argues (incorrectly) that the absence of injury-in-fact allegations in his complaint is enough to defeat federal jurisdiction. But that is not the same as "accept[ing] the truth of [Delta's] allegations" while asserting "they are insufficient on their face" to show standing. *Harris*, 980 F.3d at 699. The gist of Davis's argument is that Delta has not shown that he was a "bona fide" applicant, and that the alleged EPOA violation is therefore a mere "technical or procedural violation" of the sort courts have repeatedly held does "not manifest concrete injury[.]" Dkt. No. 33 at 2. This articulates a factual challenge because it attacks the truth of Delta's allegation that Davis was a bona fide applicant. Delta emphasizes that Davis has not introduced evidence outside the pleadings to refute standing. Dkt. No. 30 at 15. But "[a] factual attack … need only challenge the

truth of the defendant's jurisdictional allegations" with "reasoned argument as to why" the allegations "are not supported by evidence." *Harris*, 980 F.3d at 700. Extrinsic evidence is not required.

### 3. Delta fails to show that Davis was a bona fide applicant

Because Davis raises a factual challenge, Delta must respond with "competent proof" establishing the disputed fact "by a preponderance of the evidence[.]" *Id.* at 699, 701 (citation omitted). Perhaps anticipating as much, Delta submitted two declarations, which it contends indicate Davis was a bona fide applicant for employment. *See* Dkt. Nos. 31, 32. Delta also claims that Davis's own allegations establish standing. Dkt. No. 30 at 13–16. The Court disagrees and finds that Delta has not carried its burden.

In the first declaration, which is by Tara Jackson, a Global Talent Acquisition Compliance Specialist for Delta, Jackson states that Davis completed a mandatory "qualifications assessment" that took him approximately thirty-five minutes to finish. Dkt. No. 31 ¶ 8. But since this assessment was mandatory, completing it does not suggest Davis intended to seek a job rather than simply test Delta's application for compliance with the EPOA.

Jackson also describes the responsibilities of the position Davis applied to, summarizes his prior experience, and attaches his resume. *Id.* ¶¶ 3, 7–8; *see also id.* at 6–9. In particular, Jackson highlights that Davis had experience working at transportation companies—namely, Lyft and Southwest Airlines—and states that, based on Jackson's review, Davis "met the minimum qualifications for the position." *Id.* ¶ 9. But, as courts in this District have repeatedly held, being minimally qualified does not mean a plaintiff genuinely intended to apply for a job. *See, e.g., Milito v. Wizards of the Coast LLC*, No. 24-CV-1111-BJR, 2025 WL 3754049, at *4 (W.D. Wash. Dec. 29, 2025) (claim that plaintiff "was qualified to perform the position for which he applied" failed to "show any actual harm against which the EPOA intends to protect"); *Kent v. HCL Techs.*

ORDER ON MOTION TO REMAND - 11

*Ltd.*, No. C24-1332 MJP, 2024 WL 4825383, at \*3 (W.D. Wash. Nov. 19, 2024) ("Nor does Kent's claims regarding his qualifications for the job translate to a claim that he was a 'bona fide' candidate who applied to the job with good-faith intent."); *Spencer v. Total Renal Care, Inc.*, No. C24-1359RSM, 2024 WL 4834901, at \*3 (W.D. Wash. Nov. 20, 2024) (mere "conclusory allegation that Plaintiff was qualified to perform the position" was insufficient to show standing).

Indeed, Davis's resume, if anything, raises more doubt than confidence in his desire to get the job he applied to. According to his resume, Davis has a bachelor's degree in business administration, is working toward a master's degree, and has over two decades of experience in business, sales, and logistics roles at various companies. Dkt. No. 31 at 6–9. He currently works as a program manager at Lyft Inc., where his responsibilities include identifying international markets into which Lyft might expand and developing partnerships and strategies to support such expansions. *Id.* at 6. The position with Delta, on the other hand, does not require a college degree, involves preferred criteria Davis lacks (such as "In-Flight Service experience"), and comes with markedly different responsibilities than Davis's recent jobs (such as planning "employee engagement activities"; "[t]ravel arrangements and … calendar management"; and ensuring the "base is tidy, clean, well-stocked, [and] safe"). Dkt. No. 1 at 17. Beyond the generic fact that Lyft and Delta are both transportation companies, Davis's resume does not suggest he genuinely sought the In-Flight Services job.

Delta also submitted a declaration by its counsel, which states that she conducted a search of publicly available information and was unable to locate other lawsuits by Davis alleging violations of the EPOA. Dkt. No. 32 ¶ 7. The mere fact that Davis is not a serial litigant, however, is not enough, on its own, to carry Delta's burden to show that he intended to seek employment.

Finally, Delta argues that Davis's own allegations of harm establish standing. Dkt. No. 30 at 13–16. The Court agrees with the chorus of decisions from this District holding that virtually

ORDER ON MOTION TO REMAND - 12

identical allegations are insufficient to establish a plaintiff's "bona fide" job applicant status. *See, e.g., Milito*, 2025 WL 3754049, at \*4; *Kent*, 2024 WL 4825383, at \*1; *Spencer*, 2024 WL 4834901, at \*3; *Hill II*, 2025 WL 3062646, at \*4; *Floyd v. Photon Infotech Inc.* ("*Floyd II*"), No. C24-01372-KKE, 2025 WL 3442736, at \*4 (W.D. Wash. Dec. 1, 2025). Delta points to Davis's allegations that the nondisclosure of pay information "negatively impact[ed] [his] current and lifetime wages," adversely affected his "ability to negotiate pay," and "direct[ly]" resulted in "economic and non-economic harm[.]" Dkt. No. 30 at 15–16 (quoting Dkt. No. 1-1 ¶¶ 32–33, 35). But absent a genuine interest in the position, such allegations do not establish that the nondisclosure "placed [Davis] at a disadvantage relative to other applicants" or "resulted in him having to exit a lengthy interview process after learning the pay was insufficient for his needs." *Floyd II*, 2025 WL 3442736, at \*4 (quoting *Partridge*, 2024 WL 4164245, at \*4); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (holding that conclusory allegations are insufficient to confer standing). Delta never offered Davis an interview, much less a job, so Davis was never in a position to negotiate pay or participate in futile interviews.

Delta also points to Davis's allegation that he "lost valuable time" applying to the position. Dkt. No. 1-2 ¶ 34. But to the extent he was not a bona fide applicant, such harm is self-inflicted and, in any event, "not an injury that the EPOA seeks to prevent or redress." *Hill I*, 2025 WL 1582249, at \*3; *Floyd v. Insight Glob. LLC* ("*Floyd I*"), No. 23-CV-1680-BJR, 2024 WL 2133370, at \*7 n.8 (W.D. Wash. May 10, 2024), *amended on reconsideration*, 2024 WL 3199858 (W.D. Wash. June 26, 2024) ("The Court notes that any time wasted in applying for a job without good faith is actually a self-inflicted harm."). "A generalized assertion of time lost, therefore, does not support Article III standing." *Partridge*, 2024 WL 4164245, at \*4.

Nothing in the Washington Supreme Court's decision in *Branson* changes this Court's standing analysis. *Branson* answered the question of what a plaintiff must prove to show they are

ORDER ON MOTION TO REMAND - 13

a "job applicant," and thus authorized to sue, under the EPOA.  574 P.3d at 1033–34.  Whether Davis is a "job applicant" or not, his suit cannot proceed in federal court without an Article III injury.  *See Spokeo*, 578 F.3d at 341 ("[A] plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.").

In sum, the pleadings do not support, and Delta has not shown by a preponderance of the evidence, that Davis was a bona fide applicant.  Because his lack of Article III standing eliminates this Court's subject matter jurisdiction, *see Warth*, 422 U.S. at 498, the Court must remand this case to King County Superior Court.  28 U.S.C. § 1447(c).

## C.    Jurisdictional Discovery

Delta seeks jurisdictional discovery to determine whether Davis suffered an Article III injury in the event the Court finds the pleadings and record insufficient to establish standing.  Dkt. No. 30 at 18.  In particular, Delta wishes to depose Davis to "confirm whether [he] applied" for the position at Delta "in good faith or experienced any harm by way of his application."  *Id.* at 19.

The decision whether to grant jurisdictional discovery is typically within the discretion of the district court.  *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).  In the Ninth Circuit, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citation omitted).  However, a district court may deny jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (citation omitted), or where the request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citation omitted).

ORDER ON MOTION TO REMAND - 14

Here, the Court concludes that Delta's proposed inquiry into Davis's subjective intent in applying for the position is "based on little more than a hunch" and will therefore deny the requested discovery. *Id.* Delta has not meaningfully distinguished this case from numerous others involving virtually identical pleadings that have been remanded for lack of standing. And Delta's additional submissions fail to support—and, if anything, further undermine—the existence of a cognizable injury.

Accordingly, the Court denies Delta's request for jurisdictional discovery.

**D.      Futility Exception**

Finally, Delta argues that, if the Court finds Davis suffered no injury-in-fact, it should dismiss his complaint rather than remand it because Davis's action in state court would be futile. Dkt. No. 30 at 19–23. Typically, a district court must remand a removed case upon determining that it lacks subject matter jurisdiction. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (citing 28 U.S.C. § 1447(c)). A "narrow 'futility' exception to this general rule" allows the court to dismiss the case rather than remand it "if there is 'absolute certainty' that the state court would dismiss the action following remand." *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6 (9th Cir. 2022) (quoting *Polo*, 833 F.3d at 1197–98). Delta seeks to apply this narrow exception here, arguing that Washington courts would apply the same "injury in fact" requirement as federal courts to assess Davis's standing to sue. Dkt. No. 30 at 22–23.

As in *Polo*, however, it "is far from clear that a state court would dismiss" Davis's claims. 833 F.3d at 1198. While Delta cites Washington's two-part standing test—which analyzes (1) the statute's "zone of interest[]" and (2) the plaintiff's "injury in fact"—it cites no case by a Washington court dismissing EPOA claims under this test. Dkt. No. 30 at 20–21 (quoting *Bass v. City of Edmonds*, 508 P.3d 172, 175 (Wash. 2022)). In *Branson*, the Washington Supreme Court

declined to address whether "job applicants who do not have a good faith intent to obtain employment lack statutory standing" but nevertheless observed that such plaintiffs are "likely … within the [EPOA's] protected zone of interest." 574 P.3d at 1039 n.7. And in cases like this involving alleged procedural violations, state courts apply a "relaxed" injury requirement, which, as relevant, demands only a "reasonable probability" that the violation "will threaten a concrete interest of the" plaintiff. *Five Corners Fam. Farmers v. State*, 268 P.3d 892, 896 (Wash. 2011). Against this backdrop, and considering *Branson*'s discussion of who is entitled "to obtain remedies under the statute[,]" 574 P.3d at 1034, the Court lacks "absolute certainty" that the Superior Court would "simply dismiss" Davis's "action on remand." *Polo*, 833 F.3d at 1198 (citation omitted). Remand, rather than dismissal, is therefore the appropriate remedy.[2]

### III. CONCLUSION

Accordingly, the Court GRANTS Davis's Motion to Remand. Dkt. No. 27. This case is remanded to King County Superior Court.

Dated this 3rd day of April, 2026.

Kymberly K. Evanson
United States District Judge

---

[2] Because the Court remands this case for lack of Article III standing, it does not reach Davis's additional argument that the amount in controversy requirements of 28 U.S.C. § 1332(a) and (d)(2) are not met.

ORDER ON MOTION TO REMAND - 16